# Richmond

DUANE E. BOGSTAD v. JOHN B. HOPE, AN INFANT, ETC.

December 2, 1957.

Record No. 4709.

Present, All the Justices.

The opinion states the case.

*John S. Rixey* (*Rixey & Rixey*, on brief), for the plaintiff in error.

*Stanley J. Bangel* (*Bangel, Bangel & Bangel*, on brief), for the defendant in error.

Miller, J., delivered the opinion of the court.

John B. Hope, hereinafter called plaintiff, obtained a verdict for $25,000 against Duane E. Bogstad, hereinafter called defendant, for personal injuries sustained when he was struck at a street intersection in the city of Norfolk by an automobile operated by defendant. From judgment entered on the verdict, defendant appealed.

Errors assigned assert that plaintiff was guilty of contributory negligence as a matter of law and the court erred in the giving and refusal of instructions.

[1] Summarized, the pertinent evidence follows:

Hampton Boulevard, which extends in a northerly and southerly direction, is the main traffic artery connecting the United States Naval Base to the north with downtown Norfolk to the south. It is about ninety-nine feet in width, which includes an island twenty-seven feet wide in its center. To each side of the island there are three marked traffic lanes twelve feet in width for the use of south bound and north bound traffic. Convoy Escort Piers, a naval installation, is to the west of the boulevard, and the entrance to this area is over a wide, hard-surfaced street that intersects Hampton Boulevard from the west. The intersecting street from Convoy Escort Piers continues on through the island but does not extend to the east of the boulevard.

This intersection and the surrounding area are well lighted, and a traffic control device is suspended over the lanes devoted to south bound traffic where the hard-surfaced street intersects. The cycle of this lighting device is red to green to amber to red, and it displays lights to the north along the boulevard and lights to the west along the street to Convoy Escort Piers. In the intersection over the lanes devoted to north bound traffic, there is also a suspended traffic device which displays lights to the south and to the west.

Plaintiff and his companion, Bobby L. Arney, enlisted men in the Navy, whose ship was tied up at Convoy Escort Piers, spent the evening of July 16, 1956, in downtown Norfolk. Shortly after midnight they returned by bus traveling northwardly on Hampton Boulevard. When they arrived at the bus stop on the east side of the boulevard opposite the entrance to Convoy Escort Piers, they alighted. According to their testimony, which is substantially the same, a number of other sailors were on the bus, and they alighted along with Hope and Arney. Plaintiff and Arney crossed the north bound traffic lanes of the boulevard to the island which extends northwardly from the intersection. They walked across the island to its western curb and to a point in line with a prolongation of the walk on the northern side of the street leading into Convoy Escort Piers. At that time several sailors whom they did not know had also alighted from the bus and were preceding them walking westwardly across the south bound lanes of the boulevard and nearing its western curb. Arney and Hope, when at the western edge of the island, looked at the traffic light and it was red for south bound traffic. They also looked to their right and saw defendant's car about 250 to 300 feet away traveling southwardly in the outer or most westerly traffic lane. At that moment they stepped from the island and undertook to cross the south bound lanes of the boulevard. When they reached the eastern line of the center lane, they looked again to their right and saw that defendant's car had turned from the outside lane and was coming in a somewhat southeasterly direction toward them and only about 100 feet away. Arney was probably the first to observe the proximity of defendant's car for he exclaimed, "Look out," and grabbed Hope's arm. Both attempted to retrace their steps to the island but were struck by the vehicle when about six feet from the island curb.

Harvey Whitus, William Brown, and another, sailors returning to Convoy Escort Piers, were several feet behind Hope and Arney when the latter two stepped from the island and undertook to cross the boulevard. Whitus said that he saw three or four sailors ahead of Hope and Arney crossing the street and nearing the western curb. He noticed Hope and Arney "just after they were off the curb" of the island "about half way across the first lane" and at that time the automobile was "about ten feet or so from them." At the moment he saw the car he heard someone holler "Look out" and noticed that plaintiff and his companion "were in a scramble to get out of the

way of the car when he hit them." He estimated the speed of the car at about thirty miles per hour and also said that it left skid marks of about twenty feet in the traffic lane next to the island, and the car stopped with its front "about at the end of the island."

William Brown testified that while on the island, he heard someone exclaim "look out." He saw Hope and Arney in the street about five or six feet from the island attempting to avoid the car which was a few feet from them in the lane next to the island. The skid marks left by the car he estimated to be about thirty feet in length.

W. O. McCoy, who was standing about ninety feet from the point of impact, heard "the squeaking of brakes and a thump like boys being struck." He looked up immediately and noticed that the traffic light facing Convoy Escort Piers was then red. When he reached Hope and Arney, they were lying practically under the traffic light about ten feet in front of the car which left skid marks that he stepped off and said were twelve paces.

J. J. Williamson, a police officer who came to the scene, measured the automobile skid marks which he described as heavy and dark; he found them to be 64 feet in length, extending at a slight angle from the center lane to the inside lane. Questioned about defendant's sobriety, he said that Bogstad stated to him "that he had had a few beers before he went on duty and also had a few beers when he got off duty" about twelve o'clock. He could smell a heavy odor of alcohol on his breath at the time.

T. L. Barker described Bogstad's eyes as being somewhat blurred, his actions and speech as being "pretty jittery," and said Bogstad "kept mumbling a few words and kept talking of being sorry"; he also thought he could smell the odor of alcohol on Bogstad's breath.

W. L. Bordeaux testified that he noticed a skid mark angling slightly to the east in the lane next to the island, heard Bogstad say that he had been drinking about four o'clock when he went on duty and "after he got off duty he had had something to drink." Bordeaux also said he "smelt a pretty strong odor of alcohol on his breath."

M. J. Harris, who was the first city police officer at the scene, said that the defendant "had the odor of alcohol on his breath," but he did not prefer any charge against him of "being under the influence of alcohol," for he did not consider him drunk.

Bogstad, a baker in the United States Navy who also works at the Chief Petty Officers' Club, left the club about twelve o'clock on the

night of July 16, 1956, to return to his home which is to the east of the boulevard and about a mile south of the intersection. He said that when he drove upon the boulevard, he got in the inside lane about a mile and a half north of the intersection and proceeded southwardly at a speed of about 25 miles an hour in the lane next to the island. No other vehicles were observed by him, and when he was about 250 to 300 feet from the intersection, he noticed that the traffic light was red. He took his foot off the accelerator and was preparing to stop but when he got about 150 feet from the intersection, the light turned green and he picked up speed to around 30 miles an hour. He further said that Hope and Arney stepped off the island into the path of his car when he was about ten feet away, and while the traffic light was green for south bound vehicles. He did not see them until they left the curb of the island and said that he did not see any sailors until those two sailors stepped in front of him. He admitted that he had drunk two bottles of beer about 3:30 in the afternoon but denied that he had taken any alcoholic drink thereafter.

Other witnesses who came to the scene after the accident testified that they talked with or stood close to Bogstad but did not detect any alcoholic odor about him, and he did not appear to have been drinking but seemed nervous and upset.

Having obtained a verdict and judgment, plaintiff is entitled to have all conflicts in the evidence and all reasonable inferences deducible from the evidence resolved in his favor. *Humphreys* v. *Baird*, 197 Va. 667, 90 S. E. 2d 796; *Williams* v. *Service Incorporated*, 199 Va. 326, 99 S. E. 2d 648.

There is no merit in the assignment of error which asserts that Hope was guilty of contributory negligence as a matter of law. Clearly the evidence presents a question for the jury on the issue of whether or not plaintiff was guilty of contributory negligence. Its finding in his favor on that issue was warranted.

Instruction No. 3, given at the instance of plaintiff, was challenged on the ground that there was no evidence upon which to base it. The instruction follows:

"The court instructs the Jury that if you believe from the evidence that the defendant drove his vehicle through the traffic red light, then this is negligence, and if you believe that this negligence was the sole proximate cause of the accident, then you must find a verdict for the plaintiff."

This instruction expressly allows the jury to make a finding that defendant drove his vehicle through a red traffic light and then states that if he did so, he was negligent.

The testimony given by Arney and Hope was that they looked at the light and it was red against south bound traffic when defendant was 250 to 300 feet away. At that time they stepped into the lane nearest to the island and proceeded forward, but they did not say that they thereafter noticed the light. Defendant's positive evidence is that when he was about 150 feet from the intersection, the light changed from red to green and that he continued on southwardly at a slightly accelerated speed. Thus, no one testified that the light was red against defendant when he reached and entered the intersection and his positive evidence is that it turned from red to green when he was some distance away. This testimony does not justify submission of the issue to the jury as to whether or not the light was red against defendant when he drove his vehicle into the intersection. The instruction as worded was prejudicial to defendant and his objection was well taken.

Instruction No. 6, given over defendant's objection, follows:

"The Court instructs the Jury that if they believe from the evidence that the defendant was operating his automobile while under the influence of intoxicants, and that this was the sole proximate cause of the accident, then they must find a verdict for the plaintiff."

Objections to this instruction were that there was no evidence to support it and intoxication itself cannot form a basis of recovery.

Defendant admitted that he had drunk alcoholic beverages shortly before the accident and witnesses said that there was a strong and heavy odor of alcohol on his breath. Another witness testified that he "kept mumbling a few words and kept talking of being sorry," and his eyes were somewhat "blurred." This evidence amounts to something more than a "mere odor of alcohol" on one's breath commented on in *Burks* v. *Webb, Administratrix,* 199 Va. 296, 99 S. E. 2d 629. Here the evidence supports an instruction submitting the issue of whether or not defendant was operating his automobile while under the influence of intoxicants. However, instruction No. 6 is objectionable in form. After submitting the issue, it should have been so phrased as to tell the jury that operating the vehicle while under the influence of intoxicants was negligence, and if Bogstad's negligence in that respect was a proximate cause of the accident and that the plaintiff was free from contributory negligence, then they

should find for the plaintiff. In short, if defendant was driving his car while under the influence of intoxicants, he violated § 18-75, Code 1950, and that was negligence. Yet it was not his intoxication but his negligence that had to be the proximate cause of the mishap before there could be a finding against him because of his conduct in that respect.

Instruction No. 6-d was offered by the defendant as set out below:

"In the State of Virginia if an injured party was guilty of any negligence that proximately contributed to his injury, he can not recover. This is true regardless of whether the defendant was also negligent.

"If you believe from the evidence that the defendant had the green light and that the plaintiff stepped off the island into the path of the defendant's car in close and dangerous proximity thereto and his action in that regard proximately contributed to the accident, then you should find for the defendant. That is true even if you believe that the defendant was also negligent."

When objected to by plaintiff, the first paragraph was deleted and the second given as it appears above. Defendant excepted to deletion of the first paragraph.

The first paragraph was merely an abstract statement of law. The court committed no error when it struck out that part of the instruction and gave the second paragraph. The second was complete in itself and sufficient.

We have considered defendant's other assignments of error, including those taken to the court's refusal to give instructions Nos. 5-d, and 7-d to 9-d, both inclusive. It would serve no good purpose to discuss these assignments. It is sufficient to say that instruction No. 7-d was a mere abstract statement of law and the other instructions were sufficiently covered by those given, and we find no merit in any other assignments of error.

*Reversed and remanded.*