## Richmond

BOBBY L. ARNEY v. DUANE E. BOGSTAD.

December 2, 1957.

Record No. 4710.

Present, All the Justices.

The opinion states the case.

*Stanley J. Bangel* (*Bangel, Bangel & Bangel,* on brief), for the plaintiff in error.

*John S. Rixey* (*Rixey & Rixey*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

This is a companion case to *Bogstad* v. *Hope*, this day decided (199 Va. 453), but here a verdict was returned in favor of defendant Bogstad upon which judgment was entered, and we granted Arney an appeal. The evidence in the two cases is substantially the same; there is no need to describe again the intersection where the mishap occurred or restate the testimony given by the numerous witnesses. The evidence as stated in the *Hope* case is to be considered as repeated here, but as Bogstad secured a verdict and judgment in his favor, the evidence must be viewed in the light most favorable to him.

In his assignments of error, Arney asserts that the evidence proves as a matter of law that Bogstad was guilty of negligence that proximately caused his injuries and that he was free from contributory negligence. We need not discuss these assignments for the issues of whether or not Bogstad was guilty of negligence that proximately caused the mishap and whether or not Arney was guilty of negligence that efficiently contributed to his injuries were clearly questions for determination by the jury on the evidence before it.

██ We now consider other assignments of error taken by Arney to the court's granting and refusal of instructions.

Instruction P-7A tendered by Arney, and refused by the court, follows:

"The Court instructs the jury that if they find from the evidence that Bobby Arney started across the intersection when the traffic light was red for southbound traffic and before the automobile of the defendant reached the intersection, and the light changed from red to green while the plaintiff was crossing, they are instructed that he had the right of way over the said automobile, and it was the duty of the driver of the same to either change his course, slow down, or come to a complete stop, if necessary, to permit the plaintiff to safely and expeditiously make the crossing and if they find that on the occasion in question the plaintiff was exercising due care for his own safety and that the driver of the defendant's automobile disregarded his duty as above set out, and that the same was the proximate cause of the plaintiff's injury, they must find for the plaintiff."

Plaintiff contended that he was entitled to this instruction under §§ 46-203, 1956 Cum. Supp., Code 1950, and 46-244, Code 1950. The pertinent parts of § 46-203 follow:

"* * * Red indicates that traffic then moving shall stop and remain stopped as long as the red signal is shown, except in the direction indicated by a lighted green arrow. Green indicates that traffic shall then move in the direction of the signal and remain in motion as long as the green signal is given.

"Amber indicates that a change is about to be made in the direction of the moving of traffic. * * *"

Section 46-244 follows:

"The driver of any vehicle upon a highway within a business or resident district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection."

There was substantial evidence to show that plaintiff stepped from the island while the traffic light was red against Bogstad and when he was 250 to 300 feet from the intersection and that plaintiff was nearing the middle lane when the light turned green for south bound traffic. On this evidence Arney insists that he was entitled to the right of way and that Bogstad was obligated to change his "course, slow down or come to a complete stop if necessary to permit" him to negotiate the crossing in safety.

Arney concedes that § 46-203 is intended to regulate the orderly movement of pedestrians, as well as vehicular traffic. Yet § 46-244 is part of Article 5, the title of which is "Protection of Pedestrians," and this title and the express language of § 46-244 definitely indicate that it is primarily intended for the protection of pedestrians from vehicular traffic.

In *Virginia Electric & Power Co.* v. *Holland*, 184 Va. 893, 898, 37 S. E. 2d 40, in applying that part of § 2154(99), Code 1942, deal-

ing with signal lights or semaphores, which, as amended, is found in § 46-203, it was said that "A red light is a command to stop, just as a green light is a command to proceed. * * * To fail to comply with either command not only invites accidents but also obstructs traffic. * * *" An additional authority in point is *Virginia Transit Co.* v. *Tidd*, 194 Va. 418, 73 S. E. 2d 405.

This quoted language does not, however, mean that a green light is an unqualified command to a motorist to move in the direction indicated under any and all circumstances. It is only a command to do so in the exercise of reasonable care and when the movement indicated is not calculated to cause injury or damage to another. It is a conditional directive which is to be obeyed with reasonable care. When § 46-203 is considered along with § 46-244, it is clear that the directive contained in the former statute is subordinate to the right of a pedestrian who has lawfully entered an intersection where the red light is against vehicular traffic and is in the progress of crossing in the path of the automobile when the red light changes to green for vehicular traffic.

Movement of traffic at this intersection was regulated by traffic direction devices though the devices may not have been adequate to regulate properly all traffic rightfully using the intersection. Under these circumstances, the statute must be reasonably construed and practically applied so as effectually to safeguard those lawfully using the intersection. There was a bus stop on the eastern side of the boulevard opposite the entrance to Convoy Escort Piers, and naval personnel used the busses and alighted at this stop preparatory to crossing the boulevard and proceeding to their ships or quarters at the Piers. Because no green light shone in an eastwardly direction, these sailors were not doomed to remain standing at the bus stop until they were A.W.O.L. They were entitled to cross the boulevard in the exercise of reasonable care when the red light was against vehicular traffic.

The colored traffic signals and their significance as declared in § 46-203 are not to be given the effect of nullifying the provision found in the last paragraph of § 46-244 which requires the driver of a vehicle entering, crossing or turning at an intersection to change his "course, slow down or come to a complete stop" if that be necessary to permit a pedestrian lawfully in the intersection to cross in safety. This right of way given to a pedestrian who has lawfully stepped into an intersection and is proceeding across when the red light is against

an oncoming vehicle does not cease upon the change of the light before he can complete his crossing in the exercise of reasonable care. *Sanders v. Newsome,* 179 Va. 582, 19 S. E. 2d 883.

The first paragraph of § 46-244 requires a driver to yield the right of way to a pedestrian crossing a highway under the conditions therein stated *"except at intersections where traffic is regulated by an officer or direction devices."* (Emphasis added.) Yet this negative exception or proviso does not deprive a pedestrian who has lawfully entered an intersection on a green light with a red light against the driver, or lawfully entered without the express invitation of a green light, but with the red light against the driver, as Arney says he did, of the right of way expressly accorded a pedestrian by the last paragraph of § 46-244, which requires the driver to change his course, slow down or stop if necessary to allow the pedestrian to safely and expeditiously cross.

Had a pedestrian stepped from the western curb of the boulevard when the light was red against south bound traffic and green for east bound pedestrians, he would have been entitled to the right of way over south bound traffic. It would have been the duty of an automobile driver to accord him the right of way and allow him to cross unhindered. When Arney stepped from the island, the light was red against south bound vehicular traffic and green for east bound traffic entering the boulevard from Convoy Escort Piers. It would be unreasonable and an impractical application of the statute to say that under those conditions the east bound pedestrian proceeding across the boulevard had the right of way but a west bound pedestrian who might pass him in the south bound traffic lane would be denied a similar right of way though he had entered and was proceeding across the same lane while the light was red for south bound traffic and green for east bound traffic.

If not expressly, then certainly by necessary implication, the last paragraph of § 46-244 accorded Arney the right of way if he left the island and entered the lane for south bound traffic while the red light was against the oncoming vehicle.

The evidence and the applicable statutes were sufficient to support instruction P-7A, and its refusal was prejudicial to plaintiff.

Instruction No. 2-D, granted over plaintiff's objection, follows:

"The Court instructs the jury that under the law of this State a green light is a command to proceed; but this must be done with rea-

sonable care under the circumstances prevailing.

"If you believe from the evidence that the defendant was proceeding South on Hampton Boulevard and that as he approached the intersection the traffic light was green, then he had a right to proceed as heretofore stated."

This instruction ignores the fact that if Arney started from the island when the red light was against south bound vehicular traffic, then he had the right of way. Though the light may have turned green for Bogstad while he was approaching the intersection, yet if Arney had already entered the intersection when the red light was against Bogstad, it was the latter's duty to change his "course, slow down, or come to a complete stop if necessary to permit" plaintiff to safely and expeditiously cross the intersection. Section 46-244; *Bogstad* v. *Hope, supra.* The instruction was erroneous and prejudicial.

■ Objection to instruction No. 3-D was inadequate, for it stated that there was "no evidence to support it," and that does not specify the vice now relied on. However, as the judgment is to be reversed and a new trial ordered, the objectionable part of No. 3-D will be pointed out. The instruction was in this language:

"The Court instructs the Jury that if you believe from the evidence that as the defendant approached and was about to enter the intersection the traffic light was green for him, then the defendant in the exercise of reasonable care had a right to assume that the *pedestrians on the island* would grant him the right of way and had a right to rely upon such assumption until the contrary appeared to him or should have appeared to him in the exercise of reasonable care." (Emphasis added.)

The instruction erroneously assumes that Arney and Hope were on the island as Bogstad approached and was about to enter the intersection. There was credible and substantial testimony that they stepped off the island when Bogstad was 250 to 300 feet north of the intersection with the red light against him. The phrase, "would grant him the right of way," is also objectionable. Bogstad either had the right of way under the applicable statutes or he didn't have it. His right of way or lack of right of way under the statutes depended upon the position of the parties when the lights changed and not upon any grant by plaintiff or any assumption on defendant's part.

We find no merit in Arney's other assignments of error.

*Reversed and remanded.*