# Richmond

JOSEPH C. BASHAM v. LORENA M. TERRY, ADMINISTRATRIX, ETC.

March 10, 1958.

Record No. 4764.

Present, All the Justices.

The opinion states the case.

*R. S. Kime* and *W. H. Jolly,* for the plaintiff in error.

*Jack B. Coulter (E. Griffith Dodson, Jr.; Dodson, Pence & Coulter,* on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

On May 13, 1956, an automobile operated by Joseph C. Basham in which his father-in-law, John M. Terry, was a guest passenger, collided in the city of Roanoke, Virginia, with a parked car. Injuries were inflicted upon Terry from which he died fifteen hours later. Lorena Terry, a daughter of decedent, qualified as administratrix of his estate, and in an action brought against Basham under §§ 8-633 and 8-634, Code 1950, she recovered a verdict for $25,000.

No apportionment of damages was made by the jury among the statutory beneficiaries, *i.e.,* the widow and five children. With the approval of counsel, the court heard evidence and made the apportionment. It was determined and ordered that the recovery be paid to the administratrix and after payment of "attorneys' fees, costs and expense * * *", the net balance be distributed to Lelia C. Terry, widow of decedent, and judgment was entered accordingly. Sections 8-636, 8-638, Code 1950.

Errors relied upon by Basham are (a) the court's refusal to submit to the jury the issue of whether or not decedent was guilty of contributory negligence, and (b) its rulings on the admissibility of evidence offered by Basham and testimony sought to be elicited from witnesses on cross-examination by him.

Before any testimony was offered, an informal pretrial conference was held. The question of whether or not the condition of decedent's widow, a patient at Catawba Sanatorium suffering from cancer and

tuberculosis, and the condition of one of his sons who had been permanently injured in an accident in 1955 and was an invalid in the Veterans Administration hospital at Roanoke, should be admitted in evidence before the jury was discussed at length. Discussion was also had as to whether the financial status of the widow should be admitted in evidence and whether the jury or the court should apportion any recovery obtained. The court ruled that the administratrix could show where decedent's wife and son were, that decedent had visited them from time to time and that the widow had been dependent upon him for support. The deplorable physical condition of the widow and son, or the expenses incurred because of their sickness and injuries, would not be admitted in evidence. *Matthews v. Hicks, Adm'r.*, 197 Va. 112, 87 S. E. 2d 629. This ruling was acquiesced in by counsel, and it was decided that if a verdict was rendered for plaintiff, the court would hear evidence and make the apportionment to the statutory beneficiaries.

On the morning of the tragedy, Basham called at Terry's home in the city of Roanoke to take him to the Veterans Administration hospital in Roanoke county to visit Terry's son. About 9:30 a.m., after their visit at the hospital, Basham drove his car in a 25 mile speed zone at a speed estimated by witnesses to be from 60 to 85 miles an hour. His vehicle was seen to swerve first to the left and force the driver of an oncoming car from the street to avoid a collision. Basham's car then swerved to the right and left the hard surface of the road, then turned left onto the road, and then back off the right edge of the hard surface onto the shoulder of the road where it struck the rear of a Cadillac car parked four to six feet from the edge of the hard surface. This parked car was in reverse gear, with its emergency brake set, yet the force of the impact knocked it 66 feet, and both vehicles were demolished.

J. D. Smith, a police officer, saw the collision, went immediately to the scene, and then called an ambulance to take the injured men to a hospital. He followed on to the hospital, and about 10 a.m., he interviewed Terry and Basham. There Terry told Smith that Basham had picked him up at his home at approximately 5 a.m., and they had stopped at several places for drinks and beer. Basham told Smith that he had picked Terry up about 6 a.m., and said that "they had had drinks" and that he, Basham, had started drinking the night before. The officer also testified that he could "smell the odor of alcohol on the breath" of Basham and Terry.

Shortly before the accident and while at the Veterans hospital

about 8:30 a.m. Basham and Terry talked to Walter Talliferro and George Beckner, two of Terry's friends. Talliferro testified that he noticed a "kind of weak odor of alcohol" while talking to Basham and Terry but he did not indicate whether the odor was on the breath of one or both. Beckner also said that he smelled the odor of alcohol when he talked with Basham and Terry. Several witnesses who went to the scene of the accident immediately after the collision and talked with Basham and Terry noticed no odor of alcohol, and Dr. Keeley, who saw both men at the hospital about 1:30 p.m. and operated upon Terry at 2 p.m., said that he noticed no odor of alcohol. Nor did Dr. Parfus who admitted Terry to the hospital about 9:50 a.m., examined and treated him for shock, and testified as to his then condition, indicate that he noticed any odor of alcohol upon decedent. In short, some witnesses who came in contact with Terry and Basham before and after the accident smelled the odor of alcohol on their breaths, yet some who talked with them immediately after the accident did not. No witness stated or indicated that he observed anything about the manner, disposition, speech, movements, appearance or behavior of either Basham or Terry prior to or after the accident to indicate that they were under the influence of intoxicants. Section 4-2(14), Code 1950; *Gardner* v. *Commonwealth*, 195 Va. 945, 81 S. E. 2d 614.

Basham did not testify and no evidence was offered by him as to how or why the accident happened or as to whether or not he or Terry had partaken of intoxicating drink before the accident. The case went to the jury solely upon evidence given by witnesses for the administratrix.

Counsel for Basham contend that the evidence was sufficient to prove that their client was under the influence of intoxicants, that Terry knew or should have known that fact, and that shortly before the mishap he had opportunity to decline to ride with Basham and was guilty of contributory negligence by continuing to ride with him until the tragedy occurred. *Yorke* v. *Maynard*, 173 Va. 183, 3 S. E. 2d 366, is cited and relied upon.

An amendment sought by Basham, but refused, to instructions given at the instance of the administratrix, and instructions A and C offered by Basham, but refused, would have put to the jury the issue of whether or not Terry was guilty of contributory negligence. The court declined to make the amendment and refused instructions A and C because, in its opinion, the evidence was insufficient to support a finding that Basham was under the influence of intoxicants

or that Terry knew or ought to have known that Basham was under the influence of intoxicants if such was in fact his condition. In commenting on instructions A and C, the court said:

"* * * [Y]ou have no evidence in this case showing that the drinking affected in any particular the driving of Basham.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"You haven't shown that he was affected in any particular, or that his speech, muscular movements or appearance was in any degree affected by the drinking. In fact, you haven't shown anything.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

" 'C' is refused for the reason there is no evidence to show that the drinking affected in any manner the ability of Basham to drive, nor is there any evidence that Terry knew that he had been drinking to such an extent that it affected his manner of driving. In fact, there is no evidence on it at all, except the odor on the breath of Basham or Terry."

The mere odor of alcohol on one's breath is not sufficient to prove intoxication. *Burks* v. *Webb, Administratrix*, 199 Va. 296, 99 S. E. 2d 629; *Caldwell* v. *Parker*, 191 Va. 471, 62 S. E. 2d 34.

In the recent case of *Bogstad* v. *Hope*, 199 Va. 453, 458, 100 S. E. 2d 745, the driver admitted that he had drunk alcoholic beverages shortly before the accident. There was also a strong and heavy odor of alcohol on his breath, his eyes were somewhat blurred and he "kept mumbling a few words and kept talking of being sorry." We held that the evidence was sufficient to support a finding of intoxication. The proof there, as in *Yorke* v. *Maynard, supra*, measured up to the definition of "intoxicated" in § 4-2(14), and as defined in *Gardner* v. *Commonwealth, supra*. Here, the evidence only proves that there was an odor of alcohol on Basham's breath and Terry's breath before and after the accident. None of the many witnesses, some of whom were in close contact with Basham and Terry shortly before and after the collision, observed anything in their manner or conduct to indicate that either was under the influence of intoxicants. Likewise significant is the circumstance that Basham did not testify, and if he were in fact intoxicated, he could have said so.

We find no error in the court's refusal to submit to the jury the issue of contributory negligence.

■ In his opening statement one of counsel for the administratrix stated that decedent had retired from employment before the accident and had been helping in the house with "the washing" and cooking; that he gave considerable time to working in a large vegetable garden for the family and in visiting his wife at Catawba Sanatorium and his son at the hospital. He called attention to the fact that on the morning of the tragedy just before Terry and Basham arrived at the Veterans hospital, they stopped at "Ken's place" and "had a beer," thus conveying to the jury the idea that at times decedent might partake of mild intoxicants, though he did not indicate that decedent indulged to excess.

Decedent's daughter, Virginia Terry, testified in chief about the work that her father performed in laundering, cooking and cultivating the garden. She was asked if he "had anything to drink that night," meaning the evening before the tragedy. Her answer was "Not to my knowing." She heard her father go out the morning of the accident and when asked if "there was anything in the kitchen that would indicate that Mr. Basham and her father had had anything to drink" that morning, she answered, "No, sir."

Lorena Terry testified in chief that her father did house work and gave much time to cultivating the garden and in visiting his wife and son. She was asked if her father "had anything to drink that night" and if she found any evidence the next morning indicative of his having done any drinking before he left with Basham. She answered both questions in the negative. Thus evidence was placed before the jury that would tend to establish decedent's sobriety and exemplary habits and that he was a considerate, devoted and hard working husband and father.

On cross-examination the administratrix was questioned and answered as follows:

"Q. As a matter of fact, Miss Terry, your father had been accustomed to doing some drinking, hadn't he?

"A. Yes, sir.

"Q. And you were very familiar with that?

"A. Yes, sir.

"Q. As a matter of fact, he had been committed to the Veterans Hospital—"

Objection was made by counsel as follows:

"May it please the Court, we object to this testimony. * * *"

The court sustained the objection and remarked that the testimony sought to be elicited was "not responsive to anything brought out

in direct examination, and you have her on cross-examination at this point." Counsel then asked permission to proceed with the examination "subject to the court's ruling," and the following questions were put and answers elicited:

"Q. Miss Terry, to what extent did your father drink?

"A. I don't know what you mean exactly.

"Q. Was your father a heavy drinker?

"A. I wouldn't say real heavy drinker.

"Q. Would you say heavy drinker?

"A. I'd say he drank.

"Q. Was he a heavy drinker?

"A. He didn't drink every day.

"Q. When he drank was he a heavy, a constant drinker?

"A. Maybe he'd take a spell once in a while of drinking heavy.

"Q. And some of those spells went on from time to time?"

Here counsel for administratrix renewed their objection, and the court and counsel retired to chambers. Counsel for Basham argued that they were entitled to prove decedent's conduct and habits, and the character of his home life in mitigation of damages. 25 C. J. S., Death, § 122, p. 1289; 16 Am. Jur., Death, § 214, pp. 146, 147. They also asserted that the status of decedent's home life and his addiction or lack of addiction to intoxicants had been put in issue by administratrix.

Counsel for administratrix insisted that evidence tending to show the habits and conduct of decedent was inadmissible.

One said, "Your Honor, I take the position that any such alleged evidence of his being a worthless bum is irrelevant in a case of this kind."

In ruling upon the objection, the court forbade counsel for Basham to then cross-examine the witness as to decedent's addiction to intoxicants and remarked, "At this stage of the record, the Court thinks the matter has not been placed in issue." The court stated, however, that it would allow recall of the witness after administratrix rested, but indicated that Basham would have to make her his witness on the issue of whether or not Terry was addicted to use of intoxicants, and also his witness when questioned about Terry's habits and family relations.

In the course of the discussion, the court said:

"It's the Court's recollection that counsel for the defendant specifically objected, and made a motion, too, that any evidence concerning the family life of this man, the dependencies, any evidence

about whether the wife was dependent upon him, what kind of condition she was in, should not come out before this jury until after the verdict, and the apportionment thereof, became important. Now, if you wish to introduce all this evidence, then the other evidence would likewise be admissible to the jury. Take your choice."

Scrutiny of the pretrial conference does not disclose that counsel for Basham agreed or indicated that they would forego the right to prove that Terry was addicted to use of alcohol or what were his conduct and habits or the character of his home life.

We agree that the court was correct in excluding from the jury the unfortunate condition of decedent's wife and invalid son. The conference indicates that counsel for Basham argued that this should be done and that it could be best accomplished by having the court apportion any award that might be returned for the administratrix. It does not show that they indicated or agreed to forego cross-examination of any witnesses upon matter relevant to any issue.

Not only does the record disclose that evidence was given in chief by Virginia Terry and Lorena Terry incident to the sobriety, habits, conduct, and home life of decedent, but after the court ruled against any cross-examination of Lorena Terry as to her father's addiction to alcoholic beverages, his widow, Lelia C. Terry, was called as a witness by the administratrix. In her examination she likewise testified to the exemplary habits and conduct of deceased after his retirement on January 1, 1955, in helping her with the laundry, washing, marketing and cleaning. She also testified to his commendable conduct and by inference to his devotion toward her by saying that after she entered Catawba Sanatorium on June 23, 1955, he visited her there "most every day, or about, I think; about four times a week."

We are mindful that the latitude permissible in cross-examination of witnesses is largely within the sound discretion of the trial court. Yet cross-examination on a matter relevant to the litigation and put in issue by an adversary's witness during a judicial investigation is not a privilege but an absolute right 20 M. J., Witnesses, § 36, p. 473; Nash, *Law of Exidence In Va. & W. Va.*, p. 58; *Miller* v. *Commonwealth*, 153 Va. 890, 149 S. E. 459; 58 Am. Jur., Witnesses, § 620, *et seq.*

The testimony given by decedent's daughters and widow definitely tended to enhance the damages. Much of it had to do with decedent's habits, conduct, industry, and relations with his wife and children, and some either directly or through justifiable inference

tended to show that he was not addicted to intoxicants to excess. Undoubtedly it presented the picture of a husband and father of exemplary habits, industry, and good conduct in his home and in his relations with his immediate family. The natural conclusion would be that they would suffer from the loss of his help and experience much grief, sorrow and loss of desired consortium because of his tragic death. This being true, there can be no doubt that Basham was entitled to examine these witnesses as to whether or not Terry was addicted to the use of alcohol, and if so, to what extent and also as to his habits and family relations. Here the latitude of the examination is not the question presented. The court forbade any cross-examination on relevant matter upon which the witnesses had testified in chief. To examine the witnesses on matters which had been put in issue by his adversary, Basham was required to make them his witnesses and also suffer the detrimental consequences of having evidence on the deplorable condition of the widow and invalid son admitted before the jury, if offered by the administratrix.

The terms imposed by the court were not justified.

In instructing on the elements and quantum of damages allowable under the broad and liberal language of § 8-636, Code 1950, the court rightly told the jury that they might find in a sum not exceeding $25,000, and in ascertaining damages, take into consideration (among other enumerated things) the loss of decedent's "care, attention and society to his wife and to each of his five children," and also take into consideration and award such additional sum as they might "deem fair and just by way of solace and comfort to his wife and five children for the sorrow, suffering and mental anguish occasioned to each of them by his death." *Gough* v. *Shaner, Adm'r.,* 197 Va. 572, 90 S. E. 2d 171; *Matthews* v. *Hicks, Adm'r., supra; Wolfe* v. *Lockhart,* 195 Va. 479, 78 S. E. 2d 654.

These elements of damage, allowable under the death by wrongful act statute, pointedly show the importance of the right to elicit from the witnesses by cross-examination any evidence that tended to show that the conduct, habits, and family relations of decedent were not as pictured by these three witnesses. The denial of the right to cross-examine these witnesses upon the subject and matter at issue, and the requirement that Basham defer his examination and make the daughters and widow his witnesses, and incur the danger of admission of evidence on the condition of the invalid wife and son were definitely prejudicial.

In mitigation of damages allowable for "loss of solace, comfort

and companionship" and for "loss of care, attention, and society" by reason of Terry's death, Basham undertook to prove by the clerk of the Juvenile and Domestic Relations Court that warrants were sworn out in June, 1951, and February, 1952, against Terry by his wife and the administratrix, charging him with physical assault upon his wife. Counsel also asserted that Terry "was in each instance under the influence of intoxicating liquor." Yet no testimony was offered to show that he was intoxicated when the alleged assaults were made.

The evidence tendered was rejected as being "too remote" and because Basham had objected to proof of what Terry earned in his employment "prior to the time he retired" in 1955.

We find no error in rejection of this testimony for it does not appear that copies of the warrants allegedly sworn out by the wife and daughter, which, constitute the best evidence, were tendered. The instances are somewhat remote, yet had the warrants been offered, they should have been admitted as tending to show the relations between decedent and his wife, and as tending to contradict and impeach the administratrix and widow.

Exception was taken by Basham to refusal of the court to admit decedent's medical file at the Veterans Administration hospital.

Title 38, U. S. C. A., § 465, provides that these records shall be "confidential and privileged" and their contents may not be disclosed except under specified conditions. The conditions imposed in the statute were not complied with, and the court correctly rejected the evidence.

The judgment will be reversed and the case remanded for a new trial limited to the quantum of damages.

*Reversed and remanded.*