# Richmond

## EMILY C. OLIPHANT v. DONALD LEE SNYDER AND C. R. GUNTER OIL CORPORATION.

March 7, 1966.

Record No. 6123.

Present, All the Justices.

*B. M. Millner (W. Glover Garner, Jr.; Marshall & Blalock,* on brief), for the plaintiff in error.

*Daniel-W. Wilkinson, Jr. (Ford, West & Wilkinson,* on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

■ This proceeding was instituted by Mrs. Emily C. Oliphant to recover damages for injury sustained by her when an automobile operated by her was struck in the rear by an oil truck owned by C. R. Gunter Oil Corporation, and operated by its agent, Donald Lee Snyder. Tried before a jury, a verdict was returned for the defendants, and judgment entered accordingly.

On appeal the principal and controlling questions presented are whether the trial court erred in refusing an instruction, No. 2*, containing the statutory definition of driving an automobile while under the influence of intoxicants, §§ 4-2 (14), Code 1950 and 18.1-54, 1960 Repl. Vol., and in prohibiting plaintiff's counsel from commenting in argument before the jury on evidence relating to the intoxication of Snyder on the occasion involved.

Inasmuch as the judgment for defendants must be reversed for error of the trial court on the above issues, and the case remanded for a new trial, we will not relate or discuss the evidence, save that which relates to the intoxication of Snyder, and to the rulings of the court on certain other issues.

The accident occurred at approximately 1:00 p.m., on Christmas day, December 25, 1961, at the intersection of Jefferson avenue and Briarfield Road, in the City of Newport News, Virginia. The automobile operated by Mrs. Oliphant was struck in the rear by an oil truck, operated by Snyder, when she stopped at the intersection, in observance of a red traffic light.

---

* "The Court instructs the jury that under the influence of intoxicants means as follows: Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation. shall be deemed to be intoxicated.

"The Court further instructs you that if you believe from the evidence that Snyder was driving his oil truck while under the influence of intoxicants then he was guilty of negligence and if you believe such negligence, if any, on his part was the sole proximate cause of the accident then you must return your verdict for the plaintiff."

Lawrence C. Linkswiler, the driver of a car into which the Oliphant car was knocked by the oil truck, was called to testify on behalf of the plaintiff. In reference to the question of Snyder's intoxication, the following portion of his testimony is pertinent:

"Q. Did you have occasion to observe Mr. Snyder?

"A. Observe him?

"Q. Yes, sir, after the accident.

"A. Yes, he—he got on out and came across the street over there.

"Q. Did you notice anything unusual about him?

"A. He was slow getting out of the truck and—and walked real slow across the street.

"Q. Did you notice anything else about him?

"A. Slow in his manner of speech and—and the way he talked and moved, sitting in the police car."

J. W. Saunders, Police Sergeant of the City of Newport News, who said he had known Snyder for four or five years, arrived at the scene of the accident shortly after its occurrence. He said that the odor of alcohol was on Snyder's breath; that Snyder admitted he had taken something to drink but he [the officer] didn't remember the quantity; that Snyder was not staggering, but "just a little unsteady on his feet;" his speech was not "coherent;" and while he usually talked slowly, there was, on this occasion, "a slight difference in his speech."

Snyder admitted that after he arose on Christmas morning, he had "maybe one, maybe two" drinks, each containing "one or two grams" of whiskey. Said he when further questioned as to the number of drinks: "I don't remember exactly." Nor did he remember whether he drank any whiskey after breakfast, although he said, "I might have, but don't think that I would have."

James D. Fenter, owner of the oil corporation, testified that Snyder came to his house on Christmas morning; that he did not have anything to drink at his [Fenter's] house; and he observed nothing unusual about Snyder.

We have held in several recent cases that the mere odor of alcohol on one's breath presents no question of intoxication for the determination of the jury, *Burks* v. *Webb, Administratrix*, 199 Va. 296, 305, 99 S. E. 2d 629; *Basham* v. *Terry, Administratrix*, 199 Va. 817, 821, 102 S. E. 2d 285; *Laughlin* v. *Rose, Administratrix*, 200 Va. 127, 134, 104 S. E. 2d 782; *Davis* v. *Sykes*, 202 Va. 952, 955, 121 S. E. 2d 513; but that is not all that was shown in the case here before us.

In *Bogstad* v. *Hope*, 199 Va. 453, 100 S. E. 2d 745, where the defendant complained of the giving of an instruction defining intoxication on the ground that there was not sufficient evidence to support the verdict, the court, rejecting his argument on the point, said on page 458:

"Defendant admitted that he had drunk alcoholic beverages shortly before the accident and witnesses said that there was a strong and heavy odor of alcohol on his breath. Another witness testified that he 'kept mumbling a few words and kept talking of being sorry,' and his eyes were somewhat 'blurred.' This evidence amounts to something more than a 'mere odor of alcohol' on one's breath commented on in *Burks* v. *Webb, Administratrix*, 199 Va. 296, 99 S. E. 2d 629. Here the evidence supports an instruction submitting the issue of whether or not defendant was operating his automobile while under the influence of intoxicants. * * *"

In *Jackson* v. *Prestage*, 204 Va. 481, 484, 132 S. E. 2d 501, where the plaintiff complained of the trial court's exclusion of certain evidence relating to the intoxication of the defendant, we said:

"The physical condition of a defendant at the time of and immediately preceding an accident is properly before the jury in determining whether or not the defendant is guilty of negligence. 'Evidence tending to show the intoxication of a person involved in an accident is admissible on the issue of negligence * * *.' 65 C. J. S. Negligence, § 242 (b), page 1062; 38 Am. Jur., Negligence, § 322, page 1019."

Here, in addition to the evidence that there was an odor of alcohol on Snyder's breath, we have his admission that he had several drinks of an alcoholic beverage before breakfast, and, perhaps, more later on, and testimony that his conduct was "unusual," in that he was slow and unsteady on his feet and in his movements, and there was a difference in his usual manner of speech.

Under the facts here, the questions of Snyder's physical condition and whether he exercised proper control or lookout were points in issue. The refusal to grant Instruction No. 2, and the denial of any comment by plaintiff's counsel on the issue of intoxication constituted reversible error.

Plaintiff further complains that the court erred: (1) in refusing to permit her to question the police sergeant as to his opinion whether Snyder was or was not intoxicated; (2) in refusing to allow in evidence a plat or diagram made by Officer Saunders, and contained in his report to the police department; and (3) in refusing to

instruct the jury that the failure of Snyder to call his 10-year-old son, who was a passenger in the oil truck at the time of the accident, to testify in the case, raised the presumption that the son's testimony would have been adverse to his father.

The answer to the first of the above contentions is found in *Dickerson* v. *Town of Christiansburg*, 201 Va. 342, 346, 111 S. E. 2d 292, where we held that a police officer's opinion on the question of the defendant's intoxication was inadmissible. We are aware that the rule in Virginia as to the admissibility of such testimony is contrary to the rule in nearly all other jurisdictions. We think that the jury was as well qualified as was a police officer to draw all reasonable and proper inferences and conclusions from the evidence as to intoxication or lack of intoxication. *Ramsey* v. *Commonwealth*, 200 Va. 245, 105 S. E. 2d 155; *Denis* v. *Commonwealth*, 144 Va. 559, 131 S. E. 131; *Newton* v. *City of Richmond*, 198 Va. 869, 96 S. E. 2d 775.

Plaintiff cites and relies on *Thomas* v. *Hogan*, [1962] U. S. C. A. 4th Cir., 308 F. 2d 355. There, the Court recognized the Virginia rule; but decided that case in accordance with the provisions of Rule 43 (a) of the Federal Rules of Civil Procedure, 28 U. S. C. A., which permits the admission of opinion evidence in federal proceedings.

■ Plaintiff's next contention is that the court erred in refusing to allow in evidence an original plat or diagram contained in the police officer's report. That question was decided adversely to her contention in *Lee* v. *Artis*, 205 Va. 343, 136 S. E. 2d 868. See § 46.1-409 Code of Virginia, 1962 Cum. Supp. Moreover, the plat was not placed in the record. It is admitted that it was erroneous in some respects. There is nothing before us to show, in any manner, the evidence sought to be presented by it.

■ We then reach the third of the last mentioned assignments, that is, the refusal of the court to instruct the jury as to the effect of the failure of Snyder to call his son as a witness. The ten-year-old boy, who was riding on the truck at the time of the accident, made some confusing statements in the presence of Officer Saunders. According to the officer, he first said: "Daddy, we were in the right," and then said: "Daddy, we were in the right lane." On cross-examination, Snyder explained that his son meant: "On the right-hand side of the white line is in the right-hand lane." We recognize the general rule that a presumption may arise from the failure to call a material witness possessing peculiar knowledge concerning facts

essential to a party's cause; but the rule does not apply unless there is a showing that the witness, not called, was a material witness.

There is nothing to show that Snyder's son would have testified differently from the statements he made in the presence of the police officer. Those statements and the explanation of their meaning by his father were before the jury. Aware of all of this, plaintiff could have called the boy as a witness, if she thought it advisable. We are not told what was the mental capacity or intelligence of the boy. Normally, it might be expected that he would testify in favor of his father. Any presumption that he would have testified adversely to his father is pure speculation. Under the facts of this case, we find no error in the ruling of the court on this point.

For the refusal of the court to grant Instruction No. 2, requested by the plaintiff, and the refusal to permit counsel to comment on the evidence of intoxication, the judgment complained of is reversed and the case remanded for a new trial, in accordance with the views herein expressed.

*Reversed and remanded.*