## Richmond

## JASPER H. FLOYD V. DARION J. NUNN.

March 4, 1977.

Record No. 760213.

Present, All the Justices.

*Stuart R. Hays*, for plaintiff in error.

*Bert A. Nachman (Jacobs, Nachman, Murchison & Beale*, on brief), for defendant in error.

COMPTON. J., delivered the opinion of the court.

The controlling question in this personal injury action is whether a pedestrian who, while traversing a city street, enters an intersection crosswalk when the traffic light facing him is red has the right of way over a vehicle turning at the intersection.

The pedestrian, plaintiff-appellee Darion J. Nunn, sued defendant-appellant Jasper H. Floyd claiming damages as the result of an accident occurring at about 11:00 p.m. on December 13, 1973 at the intersection of Huntington Avenue and 37th Street in Newport News. In addition to a grounds of defense, Floyd filed a third-party motion for judgment against Robert Wagonfeld contending Wagonfeld's negligence was the sole proximate cause of plaintiff's injuries. The trial court sustained Wagonfeld's demurrer to the third-party complaint. Plaintiff subsequently obtained a jury verdict against Floyd for $15,000, upon which the court below entered judgment on October 22, 1975, and from which we granted a limited writ of error.

Huntington Avenue was one-way south with three traffic lanes and a parking lane adjacent to the western curb. 37th Street, also one-way and intersecting Huntington at right angles, had two westbound traffic lanes and a parking lane adjacent to its southern curb. Conventional traffic lights regulated this intersection and faced north, south, east and west.

Plaintiff approached the intersection walking east on the sidewalk along the south side of 37th Street. As he prepared to step from the southwest corner to proceed across Huntington in the crosswalk to the southeast corner, he was faced with a red traffic light, which at the time was green for traffic heading south on Huntington. Plaintiff looked to his left and saw no traffic moving south on Huntington toward the intersection. He proceeded into the crosswalk and toward the southeast corner. As he was crossing, he saw defendant's vehicle, moving west on 37th Street in the left travel lane, pull to the intersection and stop. Plaintiff continued across the street, still in the crosswalk. He testified that when he was five to six feet from the east curb of Huntington Avenue he heard the traffic light "click", indicating a change of signal, at which time defendant made "a quick left turn", and struck him in the crosswalk.

Floyd's evidence showed that as he was driving his vehicle in the rain west on 37th Street, he stopped in the left-hand westbound lane at the intersection in obedience to the red traffic light facing him. The vehicle windows were "foggy" and defendant was operating his windshield wipers. When the light changed to green, defendant proceeded to make a left turn to travel south on Huntington Avenue, at which time he saw plaintiff, for the first time, in front of his car. Defendant testified he "jammed on" his brakes and stopped about six inches from plaintiff. Then, according to Floyd, Wagonfeld struck defendant's vehicle from the rear knocking it into plaintiff. Wagonfeld, who had been stopped on 37th Street directly behind defendant and who was also turning left, admitted "tapping" the rear of Floyd's stopped vehicle but denied the blow moved defendant's car forward into the plaintiff.

Defendant assigned error to the action of the trial court in sustaining Wagonfeld's demurrer to the third-party motion for judgment. But Wagonfeld was not made a party to this appeal. Defendant's notice of appeal is directed only to the plaintiff and the petition for appeal only lists plaintiff as an appellee. *See*

Rule 5:22. Hence, we do not consider the correctness of the lower court's action on the demurrer.

Turning to the merits, the jury, of course, has settled in plaintiff's favor all conflicts in the evidence. We thus have a case in which a plaintiff has been struck in a crosswalk, which he entered against a red traffic light, by a negligent left-turning driver who proceeded on a green light in his favor. The trial court granted, over defendant's objections, instructions which permitted the jury to find that if the plaintiff entered the crosswalk "in due regard for approaching traffic", albeit against a red traffic light, he had the right-of-way across "the entire street from one side to the other in such crosswalk". This was error and we reverse.

Plaintiff relies on Code § 46.1-231, which then provided:

"**§ 46.1-231. Right-of-way of pedestrians.** — (a) The driver of any vehicle upon a highway shall yield the right-of-way to a pedestrian crossing such highway within any clearly marked crosswalk whether at mid-block or at the end of any block, or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"(b) No pedestrian shall enter or cross an intersection in disregard of approaching traffic.

"(c) The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to cross such intersections safely and expeditiously.

"(d) Pedestrians crossing highways or streets at intersections shall at all times have the right-of-way over vehicles making turns into the highways or streets being crossed by the pedestrians."

Plaintiff argues that subsection (c): "does not state that the pedestrian must only have been in the intersection when the traffic control was in his favor. It states very succinctly that when the pedestrian is in the intersection, the turning motorist shall permit the pedestrian to cross safely, and the motorist shall take the necessary steps to permit the pedestrian to do so."

He also contends that subsection (d) "further substantiates" his position and "gave Nunn the right of way over the turning vehicle of Floyd." Defendant argues that subsection (a) controls this case; he asserts that, because of the exclusion set forth in the last clause of the subsection, a pedestrian crossing against a red traffic light does not have the right of way over a turning vehicle.

Plaintiff invites us, in effect, to decide (1) that a pedestrian is under no duty to obey the command of a conventional red traffic light, and (2) that if he does walk against the red signal, under the circumstances of this case he has the right of way. We decline to so decide. Not only is the overwhelming weight of authority contrary to this proposition,[1] our statutory framework and our cases require the opposite conclusion.

The evolution of the pertinent statutes must be traced; this will demonstrate that subsection (a), and not (c) or (d), apply here.

Present § 46.1-231 descended from Code §§ 2154(123)(c) and 2154(126),[2] first enacted in 1932. Acts 1932, at 655, 656. In this

---

[1] See 4 Blashfield Automobile Law and Practice §§ 142.14-.15 (3d ed. 1965); The Law of Automobiles § 118 (Michie Co. pub. 1947); Annot., 2 A.L.R.3d 155, 167, 218-24.

[2] Code § 2154(123)(c) (Supp. 1932) provided:

"§ 2154(123). **Right of way.** — . . . (c) The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices."

Code § 2154(126) (Supp. 1932), in pertinent part, provided:

"§ 2154(126). **Pedestrians.** — (a) When crossing highways or streets within incorporated towns and cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles and shall cross wherever possible, only at intersection or crosswalks. Pedestrians in crossing any street at intersection with another street, shall at all times have the right of way over vehicles making right turns into streets being crossed by such pedestrians.

"(b) At such intersection where no traffic officer is on duty, pedestrians shall have the right of way over vehicles.

"(c) This shall not entitle the pedestrian to enter or cross the intersection, regardless of approaching traffic, but shall be interpreted to require vehicles to change their course, slow down, or come to a complete stop if necessary to permit pedestrians to safely and expeditiously negotiate the crossing.

"(d) Pedestrians shall cross only at right angles, and shall not cross highways diagonally; nor, except to board a street car, . . ."

analysis it will be important to note that the language of present subsection (a), and its exclusion, is identical in all material respects to the language of the very first enactment, Code § 2154(123)(c), dealing with pedestrian right of way at a controlled intersection.

In *Sanders* v. *Newsome*, 179 Va. 582, 19 S.E.2d 883 (1942), present subsection (a), then § 2154(123)(c), was construed. There, in a pedestrian-automobile accident occurring at a right-angle, city, traffic light-controlled intersection, where traffic flowed in two directions on each of the two streets, we said:

"When these statutes are read and construed together, as they must be, the reason for excepting the provisions of subsection (123) (c) at intersections where the movement of traffic is controlled by traffic officers or signal direction devices is manifest. To give a pedestrian, crossing an intersection on a red light, the right of way would create much confusion, hinder the orderly movement of traffic and unreasonably impair the safety of travelers upon the highway." 179 Va. at 595, 19 S.E.2d at 888.

We further stated:

"*A traffic signal light is not installed for the sole purpose of benefiting vehicular traffic. When the movement of pedestrians is in accord* with the regulation of such devices, the right of way expressly given by other statutes is not impaired." *Id.* (emphasis added).

Thus we see that prior to 1950, the construction placed on the exception in present subsection (a) was that it prevented a pedestrian crossing an intersection on a red light from having the right of way.

In 1950, along with a wholesale revision of the traffic laws, a major overhaul of the pedestrian statutes took place. This, of course, was done against the background of § 2154(123)(c) and the statements in *Sanders*, which indicated that traffic lights control pedestrians as well as vehicles and that, as we have said, a pedestrian crossing on a red light does not have the right of way. Code § 46-243 (1950) was enacted dealing only generally with the duties of pedestrians crossing streets; it also contained

the broad right-of-way language of present subsection (d) of 46.1-231,[3] which does not specifically refer to intersections controlled by traffic lights. A comparison of the statutes will reveal that the broad language of the last sentence of § 46-243, now subsection (d), was adopted from the last sentence of old § 2154(126)(a), note 2 *supra*, dealing with right turns into streets being crossed by pedestrians. In 1950, Code § 46-244 was created,[4] also with right-of-way language, but with the same specific exception, italicized in the footnote, (formerly in § 2154(123)(c) and now subsection (a) of § 46.1-231) excluding its application to an intersection controlled by traffic lights.

Thereafter, at the time of the 1958 recodification of the Motor Vehicle Code, the final sentence of old 46-243 was placed in new 46.1-231 as subparagraph (d), thereby eliminating right-of-way language from the general pedestrian statute, new 46.1-230, but placing such language in the same section which contained the traffic-controlled intersection exception in the first sentence thereof.[5]

Significantly, nowhere along the line after *Sanders* was decided in 1942 has there been any change in the pedestrian statutes which either permitted a pedestrian to walk against a red signal or accorded such pedestrian the right of way over any vehicle, including a left-turning one.

---

[3] Code § 46-243 (1950) provided:

"§ 46-243. **Pedestrians crossing streets.** — When crossing highways or streets within incorporated towns and cities, pedestrians shall not carelessly or maliciously interfere with the orderly passage of vehicles. They shall cross wherever possible only at intersections. They shall cross only at right angles. Pedestrians crossing highways or streets at intersections shall at all times have the right of way over vehicles making turns into the highways or streets being crossed by the pedestrians."

[4] "§ 46-244. **Right of way of pedestrians.** — The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, *except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.*

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection."

[5] Additional changes, not here pertinent, were made and became effective before the accident in question. *See* Acts 1962, ch. 471; Acts 1968, ch. 165; Acts 1972, ch. 576. For post-accident changes, see Acts 1976, ch. 322.

Therefore the evolution of the statutes in issue combined with the *Sanders* statements demonstrate that the facts of this case do not bring it within the broad and all-inclusive language of either subparagraph (c) of § 46.1-231 or subparagraph (d) thereof, which deals generally with right of way over vehicles by pedestrians crossing "at intersections". Rather, because this pedestrian was crossing within a clearly marked crosswalk at an intersection regulated by traffic direction devices, subsection (a) applies and *Sanders* controls; the pedestrian crossing on a red light does not have the right of way over left-turning vehicles. Accordingly, the trial court committed reversible error in holding to the contrary and in giving instructions to the jury granting the right of way to this plaintiff.

Plaintiff's reliance on *Arney* v. *Bogstad,* 199 Va. 460, 100 S.E.2d 749 (1957) is misplaced. There, we held a pedestrian was entitled to cross at a traffic-controlled "T" intersection when the *red light was against traffic,* 199 Va. at 463, 100 S.E.2d at 752. Plaintiff here argues that he, too, proceeded when the traffic light facing defendant was red. But the important fact which distinguishes that case from this is that the pedestrian in *Arney,* because of the peculiar arrangement of the traffic lights, was not faced with a red light. Indeed, there was no traffic signal whatever facing him.

In the view we have taken of this case, it is unnecessary to pass on the other issues raised by the defendant.

For the foregoing reasons, the judgment in favor of the plaintiff will be annulled, the verdict of the jury will be set aside, and the case will be remanded for a new trial on all issues, consistent with this opinion.

*Reversed and remanded.*

HARRISON, J., dissenting.

While Nunn started across Huntington Avenue when the light controlling traffic proceeding in the direction in which he was walking was red, he did so with due regard of approaching traffic. He was not negligent because there was no traffic approaching on Huntington Avenue, and traffic on 37th Street was stopped in obedience to the red light. During Nunn's

progress across Huntington Avenue the traffic signal changed to green. It thereby became the duty of Floyd to do the necessary to permit Nunn to complete his crossing safely and expeditiously. Floyd failed to do this.

It is clear from the record that Nunn was guilty of no negligence that proximately caused or proximately contributed to cause the accident in which he was injured. A jury has found in his favor and its verdict has the approval of the trial judge. The ends of justice do not require a remand of this case. I would affirm.

POFF, J., dissenting.

I believe the judgment should be affirmed.

Floyd argues, and the majority agree, that the exception in subsection (a) of Code § 46.1-231 applies to the facts in this case. I do not agree.

While the several subsections of this statute have different statutory ancestors enacted at different times, in determining legislative intent we should construe the statute in its entirety as it was amended and reenacted by Acts 1972, c. 576. In so doing, we should invoke the familiar canon of construction that one section of a statute treating specially and solely of a particular matter prevails over a section or clause referring to such matter only incidentally. *Kelley & Moyers* v. *Bowman*, 68 W. Va. 49, 54, 69 S.E. 456, 458 (1910); *see also Southern Railway Co.* v. *Com.*, 124 Va. 36, 56, 97 S.E. 343, 349 (1918). Subsection (a) applies generally to "any vehicle upon a highway" at an intersection. But subsection (d) of the same statute applies specially and solely to vehicles *turning* at an intersection.

> "(d) Pedestrians crossing highways or streets at intersections shall at all times have the right-of-way over vehicles making turns into the highways or streets being crossed by the pedestrians."

Subsection (d) contains no exception such as that in subsection (a). Indeed, declaring that the right-of-way it defines "shall" apply "at all times", subsection (d) excludes all exceptions. Its mandate is in full accord with the subsection which precedes it:

. . .

"(c) The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to cross such intersections safely and expeditiously."

It is not the vehicle traveling straight but the vehicle turning from its former direction of travel across the pedestrian's path which poses the greatest danger to the pedestrian. I am of opinion that the special provisions of subsection (d) were designed to meet that special danger, and that the majority's holding that the exception stated in subsection (a) applies to subsection (d) defeats the statutory design.

Having concluded that the exception does apply, the majority quote certain language from *Sanders* v. *Newsome*, 179 Va. 582, 595, 19 S.E.2d 883, 888 (1942), and hold that, because Nunn entered the crosswalk against a red light, he did not have the right-of-way over Floyd. Lifted from context, that language appears to support their holding. But applied to the context here, that language is inapposite. Both the circumstances considered and the statutes construed by the *Sanders* court in 1942 were different from those in the instant case.

With respect to circumstances, the intersection in *Sanders* was a conventional intersection consisting of two streets crossing at right angles, both of which served two-way traffic. Here, by posted signs both streets were restricted to one-way traffic. At other intersections, one street may serve two-way traffic while the other is restricted to one-way traffic. At still other intersections, a street may serve two-way traffic entering the intersection while the same street is restricted to one-way traffic leaving the intersection. "T" intersections, "Y" intersections where "yield" signs are sometimes posted, and intersections of several streets meeting at different angles add to the variety. Traffic lights with diverse functions regulate different traffic flows within such intersections. Unlike the conventional traffic lights in *Sanders*, "leading green" lights may favor left turns, and multiple lights governing traffic approaching from the same direction but in separate lanes may permit movement, including turns, in one or more lanes while forbidding it in other lanes. When his journey crosses several such intersections, a foot traveler faces many fateful decisions,

each different from the last and bewildering to even the most alert and agile pedestrian.

In my view, the language the majority quote from *Sanders*, addressed as it was to a pedestrian's right-of-way at an intersection where vehicles were permitted to enter from four directions, should not be construed to apply to the rights-of-way of all pedestrians at all intersections under all circumstances.

Not only were the circumstances in *Sanders* different, the statutes construed were different. There, no mention was made of Code § 2154(126)(a) (1936), the statutory ancestor of Code § 46.1-231(d). At that time, the statute granted the right-of-way to pedestrians "at all times" but only with respect to vehicles turning right, and the vehicle in *Sanders* was turning left. After the 1942 opinion was published, the General Assembly amended the statute to apply to all vehicles, whether turning right or left. Acts 1944, c. 388. It would appear that the General Assembly, disagreeing with the Court's view, made a public policy determination that it would not "hinder the orderly movement of traffic" or "unreasonably impair the safety of travelers" to require *all* motorists turning across the path of pedestrians at an intersection (where motorists most often encounter travelers on foot) to yield the right-of-way to such pedestrians *"at all times"*.

More importantly, at the time *Sanders* was decided, Code § 2154(99)(d) (1936) did not contain the clause now contained in its statutory descendant which requires motorists moving on a green signal to "yield to other vehicles and pedestrians lawfully within the intersection." Code § 46.1-184(a). I believe that Nunn was "lawfully within the intersection."

Pedestrians have the right to use public streets. While pedestrians shall not "enter or cross an intersection in disregard of approaching traffic", Code § 46.1-231(b), neither *Sanders* nor any other decided case or statute forbids them to enter or cross an intersection against a red light when there is no approaching traffic. At the time Nunn started to cross, there was no such traffic; there were no motorists approaching from his left; no motorists were permitted to approach from his right or his rear; and motorists approaching him frontally were stopped by the red light and forbidden to turn into the street he was crossing. Hence, Nunn's entry into the crosswalk, albeit against the red

light, was not unlawful. Floyd was thus required to yield to Nunn, Code § 46.1-184(a), and to "change . . . course, slow down or come to a complete stop if necessary to permit [Nunn] to cross . . . safely and expeditiously." Code § 46.1-231(c).

I would hold that when, as here, a pedestrian and a motorist approach each other along a street restricted to one-way vehicular traffic and both face a red light at an intersection, the pedestrian crossing within a crosswalk enjoys the right-of-way over such motorist turning into the street the pedestrian is crossing.