COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


HARRY D. CAMPBELL
                                                        OPINION BY
v.        Record No. 0983-06-2                 JUDGE ROBERT J. HUMPHREYS
                                                        APRIL 10, 2007
BETTY J. CAMPBELL


                  FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                              Paul M. Peatross, Jr., Judge

            Donald K. Butler (Mary Beth Long; ButlerCook, LLP, on briefs), for
            appellant.

            John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith, LLP,
            on brief), for appellee.


        In this appeal from an equitable distribution decision, Harry D. Campbell (husband)

argues that:  (1) the trial court erred when it prevented him from cross-examining wife's expert

witness and a factual witness; (2) no valid marital agreement between husband and wife exists;

(3) such marital agreement, if it does exist, is not severable; (4) the agreement is unconscionable;

(5) the agreement is contrary to public policy; (6) the trial court erred in classifying certain

property as marital; (7) the trial court over-compensated wife for certain property in its award;

and (8) wife dissipated marital funds.  Betty J. Campbell (wife) cross-appeals, arguing that the

circuit court erred in:  (1) holding that the spousal support and inheritance provisions of the

marital agreement were unenforceable; (2) dividing the marital estate unequally between the

parties; and (3) refusing to reserve spousal support for wife.  For the reasons set forth below, we

hold that the trial court erred in preventing husband from cross-examining wife's witnesses, and

because we find that the actions of the trial court constitute an abuse of discretion as a matter of law, we remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

On appeal, we must view the evidence, and all reasonable inferences flowing from the evidence, in a light most favorable to wife as the party prevailing below.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle requires us to 'discard the evidence' of [husband] which conflicts, either directly or inferentially, with the evidence presented by the [wife] at trial."  Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).  So viewed, the evidence proved the following:

### A.  Campbell Lumber Company, Inc.

Husband and wife married in January 1973, and separated in December 1996.  Four children were born from their marital union, all of whom were fully grown at the time of trial.  Husband began a business in 1957, which he initially operated as a partnership with his brothers.  Husband later became the sole proprietor of the company, and incorporated the business in 1983, renaming it Campbell Lumber Company, Inc. ("CLC").  CLC's business included lumber, cattle, and real estate.  CLC was worth approximately $330,000 at the time of the marriage, but at the time of separation was valued at approximately $2,500,000.  Its value at the time of trial was approximately $5,369,665.  Wife performed administrative work and bookkeeping for CLC from the date of the marriage until 1996.

### B.  The Shooting

The marriage between the parties proved to be somewhat turbulent from the very beginning, with husband frequently accusing wife of adultery.  The parties briefly separated, then later reconciled.  In 1996, after a fierce argument in the marital home in which husband again accused

wife of adultery, wife pulled out a gun and shot husband three times.[1]  Husband spent five days in a

coma, and a total of 22 days in the hospital as a result of the shooting.  At the time of trial, husband

still had bullet fragments in his body, and still suffered from pain as a result.

After the shooting, the parties separated and did not resume cohabitation.

### C.  The Agreement

On November 2, 2002, husband and wife met in the office of CLC and husband dictated an

agreement to wife.  Wife transcribed the agreement, writing it in longhand, and husband signed it.

They then made a copy of the agreement, also written in longhand, and wife signed the copy.  They

each kept the version of the agreement containing the other's signature.  The agreement read as

follows:

> I, Harry Delmas Campbell promise my wife Betty J. Campbell, that
> if she does not continue with the divorce, she will inherit my (our)
> estate private and corporate at my death.  If she precedes me in death,
> I inherit her share.  This is a mutual agreement between both parties.
> However I also promise if I proceed in divorce, I will give her lock
> stock [and] barrel Campbell Lumber Co. Inc. in [sic] N. Garden and
> its assets.  And I will take care of her until one of us dies.  This is my
> promise.  I want us to just get along together.

Wife kept the agreement and did not inform anyone else of its existence until March of

2004, when she took it to her attorney, who advised her to make another copy of the agreement and

sign it.  Wife testified as to this version of events.  Husband denied the existence of the agreement,

and claimed that wife had written the agreement herself and forged his signature.  Whether

husband's signature on the agreement was authentic was the subject of wife's expert's testimony

on direct and the subject about which husband sought to cross-examine him.

---

[1] The grand jury declined to indict wife for the shooting.

D.  Proceedings in the Trial Court

The trial court ordered that each party had a designated amount of time to present their evidence and cross-examine the opposing party's witnesses.  The case went to trial on August 8, 2005, and lasted until August 12.  The first day of trial was dedicated solely to an evidentiary hearing to determine the validity and enforceability of the disputed agreement.  Husband and wife both presented expert witnesses, who testified regarding the handwriting on the document.  Both parties presented numerous factual witnesses to support each other's respective theories concerning the validity of the agreement.  Husband also objected to the agreement on various legal grounds, arguing that it was not severable and thus entirely unenforceable, unconscionable, contrary to public policy, and that it had not been properly executed.

Solely as a result of the time limit on the presentation of evidence and the cross-examination of witnesses previously announced by the trial court, husband was unable to cross-examine wife's handwriting expert and one factual witness regarding the authenticity of husband's signature on the agreement.[2]  The trial court then found that the agreement was authentic, and rejected all of husband's remaining legal arguments.  However, the trial court held that the provisions of the agreement were severable and that only one of the three provisions was enforceable,[3] specifically the provision in which husband promised to give wife CLC if he proceeded with the divorce process.  As husband had proceeded with divorce, the trial court awarded wife CLC as separate property.

---

[2] Husband did not proffer what Dr. Hartford Kittel, wife's expert witness, would have testified to, had husband in fact been able to cross-examine Dr. Kittel.

[3] The trial court held that the promise to give wife his estate upon his death was unenforceable due to the revocable nature of wills.  The court also held that the provision for husband to "take care of [wife] until one of [the parties] dies" was unenforceable because it was too vague to constitute a meaningful promise.

## II. ANALYSIS

### A. Cross-Examination

Husband contends that the trial court erred when it did not permit him to cross-examine Dr. Hartford Kittel, wife's handwriting expert, and Mae Fattaleh, a factual witness for wife, regarding the disputed marital agreement. We agree.

Virginia has recognized a fundamental right to cross-examination on a matter relevant to the litigation, which applies in civil cases. See Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 204-05, 585 S.E.2d 557, 566 (2003). Furthermore, Code § 8.01-401(A) provides that "[a] party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination."

We acknowledge that, "the latitude permissible in cross-examination of witnesses is largely within the sound discretion of the trial court." Basham v. Terry, 199 Va. 817, 824, 102 S.E.2d 285, 290 (1958). Yet the trial court's discretion in this regard is not unfettered. Indeed, "cross-examination on a matter relevant to the litigation and put in issue by an adversary's witness during a judicial investigation is not a privilege but an absolute right[.]" Id. "[I]t is only after such right has been substantially and fairly exercised that the allowance of further cross-examination becomes discretionary." 1 Michie's Jurisprudence Witnesses § 36 (2004). Furthermore, the failure to allow a fair opportunity for cross-examination is never harmless error. See Food Lion, Inc. v. Cox, 257 Va. 449, 450-51, 513 S.E.2d 860, 861 (1999).

On the other hand, we recognize that the trial court may appropriately limit cross-examination, subject to the rules of evidence. For example, a trial court may, in its discretion, refuse to allow questions that seek information lacking relevance to any issue before the court, questions that seek to elicit cumulative evidence, or questions that have already been asked and answered. Here, however, the trial court entirely prohibited husband's

cross-examination of two of wife's material witnesses due solely to the depletion of his allocated time at trial. These witnesses testified "on a matter relevant to the litigation," specifically the validity of the marital agreement. In fact, whether husband had signed the agreement was the single most relevant fact in deciding whether the agreement was authentic. And because an opportunity to cross-examine is a fundamental right, we hold that the trial court abused its discretion by its arbitrary refusal to allow any cross-examination whatsoever.

Error of this magnitude is never harmless. Because the trial court's system of time limitations did not deprive husband of a constitutional right, we are hesitant to specifically label this as "structural error."[4] Nevertheless, in the context presented here, the distinction is immaterial. The trial court arbitrarily limited husband's right of cross-examination on a relevant matter, thus depriving husband of a fundamental right. See Velocity Express Mid-Atlantic, 266

---

[4]     A "structural error" is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991); see Emmett v. Warden, 269 Va. 164, 168, 609 S.E.2d 602, 605 (2005). As such, it is the constitutional magnitude of the error that defies "harmless error review." Neder v. United States, 527 U.S. 1, 8 (1999). Examples of errors which affect the framework of a trial include the denial of a public trial, the denial of counsel, the denial of an impartial trial judge, the systematic exclusion of members of the defendant's race from the grand jury, the infringement upon a defendant's right to represent himself, and the improper instruction to a jury as to reasonable doubt and the burden of proof.

Jackson v. Warden of the Sussex I State Prison, 271 Va. 434, 436, 627 S.E.2d 776, 781 (2006).
     In other words, a structural error merits automatic reversal, without requiring a showing of prejudice. A trial error, simply a mistake of law made during the trial process itself, does require a showing of prejudice, lest an appellate court will consider it mere harmless error. See id. Virginia's right of cross-examination in civil cases, while absolute, does not emanate from the United States or Virginia Constitutions, rather, it is rooted in Virginia's common law, and is now codified in Code § 8.01-401(A). Generally, structural error is limited to error that deprives a litigant of a constitutional right. See Neder, 527 U.S. at 8. But see United States v. Curbelo, 343 F.3d 273, 280 (4th Cir. 2003) ("[W]hether violative of the Constitution or not, the error here is structural, and such errors invalidate the conviction without any showing of prejudice." (internal quotations omitted)).

Va. at 204-05, 585 S.E.2d at 566. We view this as a "defect affecting the framework within which the trial proceeds." Arizona v. Fulminate, 499 U.S. 279, 310 (1991). In addition, the arbitrary restriction utilized here violates a fundamental common law and statutory procedural right that is basic to our adversary system of resolving cases and controversies. Thus it matters not that husband did not proffer Dr. Kittel's anticipated testimony on cross-examination, as no finding of prejudice is necessary. See Food Lion, 257 Va. at 450-51, 513 S.E.2d at 861.

Wife argues that Basham and its progeny are inapplicable, because husband effectively waived his right to cross-examination by using all of his allotted trial time on other issues. Wife reasons that Basham and its progeny dealt with *substantive* limitations of cross-examination and that in this case, there was no substantive limitation. However, we find this to be a distinction without a difference. Within the parameters of the rules of evidence, "[t]he right [to cross-examination] is absolute; the adjective 'absolute' definitively excludes exceptions." Food Lion, 257 Va. at 450-51, 513 S.E.2d at 861.

As occurred in this case, a party to litigation has no control over the length of time an opponent's witness testifies. If an adverse witness testifies to a matter in depth, fundamental fairness requires that a party should be able to cross-examine the witness with respect to any relevant testimony they offered on direct examination, and not be penalized from cross-examining other witnesses as a result. Notwithstanding any arbitrary time limitation imposed by the trial court, husband still had the right to cross-examine wife's witnesses if he chose, limited only by the rules of evidence. To hold otherwise would render the adversary system we use to test the credibility of witnesses and that of their testimony, a nullity. Accordingly, we reverse the judgment of the trial court and remand for such further proceedings as are consistent with our holding.

B.  Attorney's Fees

Wife requests that we award her attorney's fees and costs on appeal.  In determining the propriety of such an award, we "view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."  O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Because "we find the litigation addressed appropriate and substantial issues[,]" Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we deny wife's request for attorney's fees and costs on appeal.

III.  CONCLUSION

We hold that the trial court abused its discretion, as a matter of law, by preventing husband from cross-examining wife's witnesses due to the time limits it imposed and that such error was not harmless.  We therefore reverse and remand to the trial court for additional proceedings consistent with this opinion.  Because we remand this case for further proceedings, we find it unnecessary to address the remaining assignments of error.[5]

Reversed and remanded.

---

[5] Because the remaining issues with respect to the agreement itself and the equitable distribution of the remaining marital property depend upon the validity of the agreement, we do not address them further at this time.  Moreover, prior to oral argument, wife filed a motion to preclude husband from arguing certain issues, as wife alleged husband had not identified these issues in his assignments of error.  Because we have refrained from addressing the issues constituting the subject of the motion, we find it unnecessary to rule on the motion, as it is now moot.