COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Powell[*]
Argued by teleconference


BETTY J. CAMPBELL

v.      Record No. 1481-10-2

HARRY D. CAMPBELL

MEMORANDUM OPINION[**] BY
JUDGE LARRY G. ELDER
AUGUST 9, 2011


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Sidney H. Kirstein for appellant.

Donald K. Butler (Player B. Michelsen; Butler Armstrong, LLP,
on brief), for appellee.


In this second appeal from a final decree of divorce, Betty J. Campbell (wife) argues that the

trial court erred:  (1) in refusing to allow wife to relitigate the grounds for divorce, an issue decided

in the first divorce proceeding in 2006; (2) in awarding Harry D. Campbell (husband) sixty-two

percent of the parties' marital property because the award was based on the allegedly erroneous

grounds for divorce; (3) in failing to include as part of the marital estate $800,000 in gifts husband

made to the parties' children and $127,000 in timber he removed from one of the marital estates;

and (4) in refusing to award wife $58,000 in accrued support under a 2002 *pendente lite* support

order.  We hold that:  (1) the law of the case bars wife from relitigating the grounds for divorce

because she did not appeal the 2006 determination that she constructively deserted husband; (2) the

trial court did not err in relying on wife's constructive desertion of husband as credible evidence to

---

[*] Justice Powell participated in the hearing and decision of this case prior to her
investiture as a Justice of the Supreme Court of Virginia.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

support the division of the marital estate; (3) credible evidence supports the trial court's findings that husband's gifts of real estate and removal of timber did not constitute waste; and (4) the reversal of the previous decree of divorce did not resurrect the 2002 *pendente lite* support order such that wife was not entitled to any past-due support. Accordingly, we affirm the challenged rulings.

## I.

## BACKGROUND

"We review the evidence in the light most favorable to . . . the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). So viewed, the evidence establishes that husband and wife married in January 1973 and separated in December 1996. Four children—Tinsley Campbell, Robi Durrer, Patti Rogers, and Kathy Ogden—were born from their marital union, all of whom were emancipated at the time of the divorce proceedings. Husband had two children, Sandra Austin and Teresa Campbell, from a previous marriage. From its inception, the marriage was acrimonious, with frequent allegations of adultery and physical abuse. On December 21, 1996, after an argument in which husband accused wife of adultery, husband was shot multiple times.[1] The shooting left husband in a coma for five days, and he remained hospitalized for twenty-two days.

Husband filed for divorce on the grounds of constructive desertion, alleging wife's shooting him was "without any just cause or provocation." Wife denied attempting to kill husband, claiming she shot him "in self defense and to protect their son who was being seriously assaulted by [husband]." Wife filed a crossbill for divorce, alleging husband committed adultery. Upon wife's request for *pendente lite* spousal support, on February 27, 2002, the trial court awarded wife $1,000 per month "until further order of this Court."

---

[1] Wife originally indicated she was the shooter, but, as discussed *infra*, she claimed in later proceedings that one of the parties' children shot him.

The parties presented evidence at trial from August 9 through August 12, 2005 (2005 proceedings). One contested issue was the validity of an agreement (the agreement) that purportedly conveyed Campbell Lumber Company (CLC) to wife if husband proceeded with the divorce. Both parties presented expert witnesses to support their respective theories concerning the enforceability of the agreement, and the trial court ruled that the agreement was binding on the parties such that CLC "shall be the sole and separate property of [wife]."

The trial court issued a letter opinion, memorialized in a final decree of divorce (collectively the 2006 decree) addressing the remaining issues the parties raised. Pertinent to this appeal, the trial court held that husband "has shown by sufficient evidence that [wife] was guilty of constructive desertion when she shot [husband] in 1996," thereby "entit[ling him] to a divorce on the grounds of constructive desertion." After classifying and valuing the parties' marital and separate property, the trial court awarded husband seventy-two percent of the marital property and wife twenty-eight percent. The trial court further held that "[b]ased on the factors [of Code § 20-107.1], including the circumstances of the shooting contributing to the dissolution of the marriage, the Court denies an award of spousal support to [wife]. She has substantial assets [from the equitable distribution award] with which to support herself."

Both parties appealed the 2006 decree. Campbell v. Campbell, 49 Va. App. 498, 500, 642 S.E.2d 769, 771 (2007) (Campbell I). The only issue this Court addressed was whether "the trial court erred when it prevented [husband] from cross-examining wife's expert witness and a factual witness" regarding the agreement, id., and held that the circuit court "abused its discretion, as a matter of law, by preventing husband from cross-examining wife's witnesses due to the time limits it imposed[,]" id. at 507, 642 S.E.2d at 774. We did not address the remaining assignments of error "with respect to the agreement itself and the equitable distribution of the remaining marital property" because they "depend[ed] upon the validity of the agreement." Id. at 507 n.5, 642 S.E.2d

at 774 n.5. Accordingly, the mandate accompanying Campbell I "reversed and annulled" the 2006 decree and "remanded to the trial court for further proceedings in accordance with the views expressed in [Campbell I]." At no point did wife challenge the 2006 decree on the basis of the grounds for divorce.[2]

On remand, the trial court held an evidentiary hearing to determine the validity of the agreement. The trial court held that wife did not meet her burden of proving the agreement was an enforceable contract, and it scheduled the matter for hearings beginning April 7, 2009, to address the equitable distribution of the marital assets (2009 proceedings). Husband filed a motion to limit the scope of the 2009 proceedings, specifically requesting that wife be "precluded by the law of the case from relitigating the grounds for divorce," due to wife's new claim that the parties' son, Tinsley, shot husband. Wife filed a brief in opposition and filed a request that the trial court award her spousal support arrearages under the 2002 *pendente lite* order. After hearing argument on the matter, the trial court held that the law of the case doctrine barred wife from relitigating the grounds for divorce. However, the trial court held that it would hear evidence pertaining to "the circumstances and factors [that] contributed to the dissolution of the marriage, including any grounds for divorce." The trial court expressly stated that such evidence would be used to determine the equitable distribution of the marital assets under Code § 20-107.3 but would not be used to decide the grounds for divorce.

The 2009 proceedings spanned from April 7 through April 10, 2009, and again from September 14 through September 15, 2009, during which the parties presented extensive evidence in the form of testimony and documentary exhibits regarding their respective non-monetary contributions to the marriage as well as the other spouse's negative contributions.

---

[2] Wife endorsed the 2006 decree by objecting to "its corollary finding that she is guilty of constructive desertion as to [husband]," but she abandoned this argument in the first appeal.

- 4 -

Further, husband presented evidence relating to various parcels of land he had gifted to his children after the 1996 shooting.

At the conclusion of the evidence, the trial court issued a letter opinion and final decree for divorce (collectively the 2010 decree). Pertinent to this appeal, the trial court affirmed the 2006 decree's finding that wife constructively deserted husband when she shot him. Further, the trial court awarded husband sixty-two percent of the marital property after considering the factors enumerated in Code § 20-107.3(E). Finally, the trial court denied an award of spousal support to wife because "she will have substantial assets upon which to support herself." Both parties filed objections and legal memoranda in support of their respective positions. At a hearing on June 14, 2010, the trial court declined to hear additional arguments in the matter and denied all outstanding motions for reconsideration.

This appeal followed.

II.

ANALYSIS

A.

GROUNDS FOR DIVORCE

Wife first argues the trial court erred in holding the law of the case doctrine barred her from relitigating the grounds for divorce. Wife contends Campbell I "reversed and annulled" the 2006 decree to the extent that wife was free to relitigate all disputed issues. Wife further asserts that law of the case doctrine does not apply because the facts underlying the grounds for divorce at the 2005 proceedings—that wife shot husband in self-defense—were materially different from the facts at the 2009 proceedings—that Tinsley shot husband.[3] We disagree.

---

[3] At the 2009 proceeding, wife testified that when she returned home from running errands on December 21, 1996, husband confronted her about an alleged affair. The argument intensified, and wife testified that at one point, Tinsley joined the argument and husband began

- 5 -

"Pursuant to the 'law of the case' doctrine, when a party fails to challenge a decision rendered by a court at one stage of litigation, that party is deemed to have waived her right to challenge that decision during later stages of the 'same litigation.'" Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26, 661 S.E.2d 822, 826 (2008) (quoting Kondaurov v. Kerdasha, 271 Va. 646, 658, 629 S.E.2d 181, 188 (2006)). Here, as memorialized in the 2006 decree, the trial court found that wife "was guilty of constructive desertion when she shot [husband] in 1996." In the first appeal, wife argued that the trial court erred in "(1) holding that the spousal support and inheritance provisions of the marital agreement were unenforceable; (2) dividing the marital estate unequally between the parties; and (3) refusing to reserve spousal support for wife." Campbell I, 49 Va. App. at 500, 642 S.E.2d at 771. Indeed, wife's brief in Campbell I explicitly stated that the trial court "may have been justified in granting [husband] a divorce based on the alleged shooting (*a decision [that wife] has not appealed*)." (Emphasis added)." Because wife chose not to appeal the grounds for divorce in Campbell I, law of the case doctrine precludes her from relitigating that issue on this appeal.

We reject wife's argument that the language contained within the mandate accompanying our Campbell I decision rendered the 2006 decree "totally inoperative and of no further effect." The mandate stated that the 2006 decree was "reversed and annulled and the case is remanded to

---

striking him. Wife said she left the bedroom as Tinsley and husband continued to "struggle." She then heard a shot, returned to the room, and saw Tinsley holding a firearm. Wife testified that Tinsley told her, "Mom, he was going to kill me, he was going to kill me." Wife said she lied to the police about shooting husband because she "was trying to protect Tinsley." She agreed that she signed under oath her cross-complaint for divorce, which stated wife "fired on [husband] in self defense."

Tinsley agreed that he was involved in an argument between wife and husband, but testified that wife was the one who shot husband and then asked Tinsley to lie about it. Husband confirmed that it was wife who had shot him. Robi Durrer testified that immediately after the shooting, wife told the children to lie to the police "to make sure that we said . . . that [husband] was mean, that he was abusive." Tinsley confirmed that wife coached the children into telling the police that husband was abusive.

- 6 -

the trial court for further proceedings *in accordance with the views expressed in the written opinion of this Court.*" (Emphasis added). This mandate "is the directive of the appellate court certifying a judgment in a particular case to the court from which it was appealed." Powell v. Commonwealth, 267 Va. 107, 127, 590 S.E.2d 537, 550 (2004). However, "the mandate is controlling only 'as to matters within its compass.'" Id. (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, 59 S. Ct. 777, 781, 83 L. Ed. 1184, 1188 (1939)). Thus, the mandate "'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" Id. (quoting United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)).

The mandate in Campbell I, viewed "in light of the appellate court's opinion," id., makes clear that the trial court was limited on remand to addressing only those issues pertaining to the equitable distribution of the parties' marital assets. The opinion held that the trial court in the 2005 proceedings erred "by preventing husband from cross-examining wife's witnesses due to the time limits it imposed." 49 Va. App. at 507, 642 S.E.2d at 774. This error related directly to the equitable distribution of the remaining marital property, and we did not address those issues. See id. at 507 n.5, 642 S.E.2d at 774 n.5. Because the Campbell I opinion acknowledged the holding in the 2006 decree that "wife pulled out a gun and shot husband three times," id. at 502, 642 S.E.2d at 771, and wife did not ask us to revisit that holding, that opinion implicitly constrained the trial court from relitigating the issue of whether wife's shooting of husband constituted constructive desertion. See also Va. Imps., Ltd. v. Kirin Brewery of Am., LLC, 50 Va. App. 395, 406-07, 650 S.E.2d 554, 559-60 (2007) (noting that the decision from the first appeal implicitly decided against Kirin's termination-by-operation-of-law argument because to hold otherwise would have rendered this Court's reversal mandate "wholly meaningless").

Further, we reject wife's claim that her recantation of her prior admission that she was the person who shot husband circumvents law of the case doctrine. Wife correctly avers that

"[w]here material facts have changed between the first appeal and the second, the law of the case doctrine is inapplicable." Rowe v. Rowe, 33 Va. App. 250, 266, 532 S.E.2d 908, 916 (2000). "There is nothing in the rule to inhibit a party, on a second trial, from supplying omitted facts or from averring a different state of facts." Steinman v. Clinchfield Coal Corp., 121 Va. 611, 622, 93 S.E. 684, 688 (1917). However, a party cannot rely on the material change in facts exception to the law of the case doctrine where, as here, the party herself created the conflict in evidence as part of her litigation strategy.

In Rowe, we held the trial court in the first proceeding erred in classifying the augmentation in value of stock as marital property, but we found no error in the underlying valuation of that stock. 33 Va. App. at 256, 532 S.E.2d at 911. During the pendency of the second trial on remand, the husband sold the stock at a premium price. We held that on the second appeal, wife should have been permitted to introduce new valuation evidence because the previously determined values were based on the projected discounted price of the stock. We reasoned it "would be manifestly unfair on remand for the court to use the discounted estimated value . . . as the basis for determining how much the stock appreciated in value . . . and to deduct that value from the premium sales price . . . in order to determine how much the stock appreciated." Id. at 267, 532 S.E.2d at 917.

In this case, by contrast, the "change in fact" is wife's position that is wholly inconsistent with the one she previously advanced during the 2005 proceedings. In her cross-complaint for divorce, wife asserted that she shot husband in self-defense. At the 2005 proceedings, wife asserted her Fifth Amendment right against self-incrimination when asked if she shot husband. Wife testified during the 2009 proceedings that she initially told the police she shot husband. On remand, wife now contends Tinsley shot husband and that she attempted to take the blame in an effort to protect Tinsley from criminal prosecution. Because wife caused the change through her

- 8 -

own litigation tactics, she cannot claim that this amounts to a material change in fact. See Va. Elec. & Power Co. v. Norfolk S. Ry. Co., 278 Va. 444, 462, 683 S.E.2d 517, 527 (2009) (preventing "a party from assuming successive positions in the course of a suit or series of suits with regard to the same fact or set of facts if those facts are inconsistent or mutually contradictory"). Accordingly, the trial court properly held wife was precluded from relitigating the grounds for divorce.

B.

EQUITABLE DISTRIBUTION OF MARITAL ASSETS

Wife next argues the trial court based its distribution of the marital property on the allegedly faulty belief that wife shot husband. Wife contends this error is presumed to be prejudicial and husband had the burden of proving harmless error.

Code § 20-107.3(E) authorizes the trial court, after classifying the parties' property as separate or marital, to determine "[t]he amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment." The trial court must consider, *inter alia*, "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically *including any ground for divorce*." Code § 20-107.3(E)(5) (emphasis added). "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). While a trial court must consider all of the equitable distribution factors in Code § 20-107.3(E), a court "need not quantify or elaborate exactly what weight was given to each of the factors." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988).

Wife argues that because the trial court refused to allow her to relitigate the grounds for divorce, it based its distribution of the marital assets on the allegedly erroneous ruling of constructive desertion. Because we hold that the 2006 decree's ruling that wife constructively deserted husband when she shot him on December 21, 1996, is the law of the case, this compels the conclusion that the trial court did not err in considering wife's constructive desertion when fashioning the equitable distribution award under Code § 20-107.3(E)(5). In any event, the trial court found whether wife actually shot husband was irrelevant because it held that the "claim of shooting is what ultimately result[ed] in the separation of the parties and family." The trial court noted wife "made the choice then at that time that it was more important to protect Tinsley than it was to preserve the marriage." These statements confirm that the trial court properly considered the evidence relating to wife's role in the dissolution of the marriage as a factor under Code § 20-107.3(E), and the trial court did not abuse its discretion in awarding husband sixty-two percent of the marital assets.

## C.

## MARITAL WASTE

Wife next argues the trial court erred in failing to consider husband's actions as marital waste. Specifically, wife argues husband made various gifts of real estate to their four children totaling approximately $800,000 with the intent to dissipate marital funds. Wife further contends husband removed approximately $127,000 in timber from the marital estate.

In opposition, husband argues the gifts to the children were part of a "settled practice" pursuant to husband's desire to provide each of his children a place to live once they grew up.

Husband further argues wife participated in the gifting by contributing $20,000 toward the mortgage payment of one of their daughters. [4]

"Just as a court may consider positive contributions to the marriage in making an equitable distribution award, it can also consider 'negative' contributions in the form of squandering and destroying marital resources." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). The generally accepted definition of "waste" in the context of equitable distribution awards is the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy." Id. Typically, "the use of funds for living expenses, medical bills and other necessities of life while the parties are separated does not constitute dissipation." Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 576 (1992). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990). "[G]ifts to family members c[an] be considered dissipation," but a "pattern of pre-separation giving as a part of estate planning" can provide evidence to support a finding that the giving was not done in anticipation of divorce. Decker v. Decker, 17 Va. App. 12, 20, 435 S.E.2d 407, 413 (1993).

Husband did not deny gifting various parcels of land to his children, but asserted that these gifts were part of his promise to provide each of his children a house when they reached adulthood and married. Kathy Ogden and Sandra Austin confirmed this testimony. However, wife testified that husband had no such plan and instead wanted his children to earn their own

---

[4] Husband further argues any error should be offset by wife's own expenditures that dissipated the marital estate. Specifically, husband accuses wife of stealing $185,000 in cash and approximately 230 head of cattle. However, despite husband's contention to the contrary, husband did not include these as separate assignments of error. Accordingly, we will not address them now on appeal. See Rule 5A:20.

living without assistance. The evidence supports the trial court's reliance on husband's testimony. Specifically, other than wife's own testimony, no evidence in the record shows that wife objected to husband's gifting of the real estate. In fact, Kathy testified that wife "pitched in" approximately $20,000 to help pay for the mortgage on a residence she built on the property husband gifted to her. Further, the testimony reveals that prior to the parties' separation, husband gave numerous gifts of vehicles and trailers to the children. Although wife testified these gifts were meant to be used for business purposes, she admitted they "w[ere] a gift for the child[ren] from us." The record provides credible evidence that wife knew of husband's plan to give each of the children real estate once they reached adulthood and that she participated in the giving, as evidenced by her contribution to Kathy's mortgage on the residence Kathy built on the real property she received from husband. Such evidence supports the trial court's finding that the gifts of real estate were not made in anticipation of divorce.

In regard to the removal of the timber, husband testified that the profits from the sale of the lumber went back into CLC. The trial court believed this testimony, finding that "the timber and equipment . . . [were] incorporated into the value of the business." See, e.g., Northcutt v. Northcutt, 39 Va. App. 192, 198, 571 S.E.2d 912, 915 (2002) (holding that using loan proceeds to pay regular business operating expenses does not constitute waste). We note that because CLC was engaged in the timber business, it is logical that timber removed from its land would be reinvested in the business.

Concluding no error occurred, we affirm the trial court's rulings that husband's gifts of real estate to his children and his removal of timber from the marital property did not constitute marital waste.

D.

SPOUSAL SUPPORT ARREARAGES

Wife's final assignment of error involves arrearages she claims husband owed under the 2002 *pendente lite* support order. It is undisputed that husband met his support obligations pursuant to this order until October 2005, the date the trial court issued the letter opinion accompanying the 2006 decree. However, wife contends husband had a continuing duty to pay spousal support because husband's appeal forestalled the finality of the 2006 decree. Thus, wife avers the 2002 spousal support order remained in effect up until the 2010 decree was entered.

Code § 20-107.1 authorizes a trial court "to compel a spouse to pay any sums necessary for the maintenance and support of the petitioning spouse." An award of *pendente lite* spousal support "terminate[s] upon the final adjudication of all of the issues properly raised in the pleadings, which would usually result in dismissal of the case from the pending docket." Taylor, 5 Va. App. at 441, 364 S.E.2d at 247; see Whiting v. Whiting, 262 Va. 3, 4 (2001); Smith v. Smith, 4 Va. App. 148, 152, 354 S.E.2d 816, 818 (1987).

We find no merit to wife's contention that the reversal contained within Campbell I nullified the finality of the 2006 decree. "A court order is final if it 'disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the decree.'" Vokes v. Vokes, 28 Va. App. 349, 355, 504 S.E.2d 865, 868 (1998) (quoting Street v. Street, 24 Va. App. 14, 19, 480 S.E.2d 118, 121 (1997)). The 2006 decree did not retain jurisdiction to decide other issues and was thus a final order that resolved all issues before the trial court. See Rule 1:1.

The reversal of a decree or order resurrects a previous order for *pendente lite* support only when the order is void *ab initio*. See Whiting, 262 Va. at 3. Contrary to wife's assertions,

- 13 -

the reversal and remand of an order due to the erroneous actions of the trial court do not render that order a complete nullity. Rather, an "order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court could 'not lawfully adopt.'" Singh v. Mooney, 261 Va. 48, 51, 541 S.E.2d 549, 551 (2001) (quoting Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998)). Here, we reversed the trial court in Campbell I because it erroneously prevented husband from cross-examining wife's witnesses. This ruling did not involve the underlying authority of the trial court. Accordingly, the 2002 *pendente lite* spousal support order "only applied during the pendency of litigation and was terminated when the cause was dismissed by the [2006 decree]," Whiting, 262 Va. at 4, and husband's obligations under that order ceased upon the trial court's ruling that wife was not entitled to permanent spousal support.

## III.

## CONCLUSION

In summary, because wife did not challenge the grounds for divorce at the first appeal, the law of the case precludes her from relitigating that issue now in this subsequent appeal. Second, wife's constructive desertion of husband provides credible evidence that supports the trial court's equitable distribution of the marital property favoring husband. Third, credible evidence supports the trial court's findings that husband's gifts of real estate to his children and his removal of timber from the marital property did not constitute marital waste. Finally, the 2006 decree operated as a final order that terminated the 2002 *pendente lite* support order even though Campbell I reversed portions of that order. Thus, husband properly ceased making payments under the 2002 support order. Accordingly, we affirm the 2010 decree.

Affirmed.